U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

NOV -5 2012

TONY R. MOORE, CLERK
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

UNITED STATES OF AMERICA

versus                  CRIMINAL NO. 10-0168-01
                                       JUDGE TOM STAGG

JOSEPH MATTHEW EVANS

## MEMORANDUM RULING

Before the court is Joseph Matthew Evans's ("Evans") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. See Record Document 76. Based on the following, Evans's motion is **DENIED**.

### I. BACKGROUND

**A.**   **Factual Background.**

An investigation into Evans's fraudulent use of credit card account numbers was initiated by the United States Secret Service, Shreveport Division. A representative of Elavon, an electronic payment processor of debit and credit cards, provided this information to the Secret Service. See Record Document 83 at 3. This investigation revealed that Evans, through his company, Evans Consolidated Industries ("ECI"), used Elavon for the purpose of processing credit card transactions in connection with sales purportedly conducted by ECI. Evans indicated to Elavon

that ECI sold oil company parts and accessories at trade shows and designated Community Bank as his bank demand deposit account ("DDA"). Once accepted by Elavon, Evans began processing non-existent sales using invalid credit cards. Due to unpaid processing fees, ECI's account was put into collection and eventually closed. Evans claimed that he had to change bank accounts for ECI due to a break-in at their office. See id. at 4.

On November 11, 2008, Evans obtained a new merchant account from Elavon by providing them with a DDA at Chase Bank. Between November 13, 2009, and December 22, 2009, Evans processed non-existent transactions using valid credit card information totaling $40,609.29. An investigation by Elavon began on December 16, 2009, which revealed ECI's account had been flagged by their merchant monitoring system for receiving nineteen chargebacks on one card totaling $9,000. Elavon determined that ECI had no funds in its DDA to handle any subsequent chargebacks and on December 22, 2009, the merchant account was closed due to fraud related activity. The actual loss suffered by Elavon was reported as $33,264.55 as a result of this offense. See id.

On February 10, 2009, Evans opened a merchant account with First Data, another credit card processing company. In this application, Evans indicated that ECI was involved in the sale of surveillance systems. Chase Bank and Capital One Bank were the card-issuing banks for the accounts used in Evans's transactions with First

Data. First Data initially sustained losses totaling $9,481.21 but recovered $4,919.21 of that amount, resulting in an actual loss of $4,562.00. See id. at 4-5.

An interview with Evans was conducted on September 3, 2009, wherein he admitted to utilizing the compromised credit card numbers for purchases without being in possession of the actual cards. Evans indicated this was due to customers calling in to place an order with special requests for him to charge the cards in increments until the total amount of the purchase was met. Evans admitted to keying most of the transactions himself, but did add that he had a temporary employee in December of 2008. Evans could not, however, provide any contact information or documentation verifying this person had actually worked for ECI. See id. at 6.

In the fall of 2008, Evans's bank accounts at Community Bank of Louisiana and Tri-State Bank and Trust revealed that both his business and personal accounts were closed after the banks identified fraudulent activity in his accounts in the form of check kiting. During the first part of September of 2008, Evans called Kyle Kennington ("Kennington"), vice president of Community Bank, to inform Kennington that he was out of town in Houston, but would return to cover the non-sufficient funds ("NSF") accounts. On September 29, 2008, Kennington received a letter on ECI letterhead, signed by the ECI European Operations Trust Manager, informing him that Evans had been in an accident and had transferred daily operations to the ECI office in Zurich, Switzerland. The letter indicated that a wire transfer

would be made into Evans's account to cover all the NSF charges. No transfer has ever been received and further investigation indicated that there was no overseas division of ECI. See id.

During the presentence interview, Evans informed the probation officer that ECI was in the process of obtaining a $20,000,000 contract from Globalstar for the purpose of constructing multiple buildings in India and other countries to house telecommunications equipment. The probation officer contacted the representative with Globalstar who verified that he had talked with Evans but no contract had been discussed or agreed upon between the two.

After Evans's indictment in May of 2010, he attempted to purchase a $359,000 home in Bossier City, Louisiana, and a $10,000,000 Cessna Citation X jet with the funds received from the non-existent $20,000,000 contract with Globalstar. As a result of these two incidents, on September 10, 2010, the government filed a motion to revoke Evans's bond. Evans was convicted of a misdemeanor offense of attempted felony theft in state court on January 11, 2011, as a result of the attempt to buy the $359,000 house in Bossier City, Louisiana. Evans was sentenced to a one-year suspended term of imprisonment.

**B.     Procedural History.**

On May 26, 2010, a federal grand jury returned a thirteen count indictment against Evans. Evans was charged in counts one through three with bank fraud in

violation of 18 U.S.C. § 1344. Counts four through twelve charged him with wire fraud in violation of 18 U.S.C. § 1343. Count thirteen charged him with one count of access device fraud in violation of 18 U.S.C. § 1029(a)(2). See Record Document 1. Evans entered into a plea agreement with the government, and pursuant to that agreement, pled guilty to count ten on January 27, 2011. See Record Documents 48-49.

A sentencing hearing was conducted on May 25, 2011, and the court heard all arguments regarding the several objections made by Evans concerning his presentence report. The court adopted the presentence report's findings of fact. See Record Documents 64 and 83. The probation office concluded that Evans failed to terminate or withdraw from criminal conduct and did not qualify for an adjustment for acceptance of responsibility pursuant to United States Sentencing Guideline section 3E1.1. See Record Document 83 at 8. Evans received an upward adjustment to his offense level under United States Sentencing Guideline section 3C1.1 for obstruction of justice. See id. at 7. Although Evans's guideline range was 18 to 24 months with a statutory maximum for wire fraud of 30 years, he was sentenced to a term of sixty months of imprisonment as to count ten with five years supervised release and restitution in the amount of $37,826.55. The remaining counts of the indictment were dismissed. See Record Document 58. Evans filed a notice of appeal. See Record Document 60. On June 1, 2012, the Fifth Circuit affirmed, finding no

error with respect to the reasonableness of Evans's sixty month sentence. See Record Document 75. Evans then filed the instant motion, pro se. See Record Document 76.

## II. LAW AND ANALYSIS

In this motion, Evans states eleven separate grounds upon which he challenges his sentence. As a general rule, the review of a conviction pursuant to a section 2255 motion is limited to constitutional and jurisdictional questions. See United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998).

A. **Issues Not Cognizable Under Section 2255.**

Technical application of the Sentencing Guidelines by a district court does not give rise to a constitutional issue. See Cervantes, 132 F.3d at 1109; United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Such claims, therefore, are not cognizable in a section 2255 motion. See id. As a result, Evans's challenges to the enhancement for obstruction of justice and the denial of a reduction in offense level for acceptance of responsibility cannot be considered by the court. These claims relate to the application of the Sentencing Guidelines in determining the defendant's offense level, and they must be dismissed.

B. **Procedural Default.**

"Section 2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been reached by direct appeal." United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995). "Other types of error may not be raised under

section 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal *and*, if condoned, would result in a complete miscarriage of justice." Cervantes, 132 F.3d at 1109 (emphasis in original). Evans's claim that he received an inequitable sentence when compared with that of another defendant who was entirely unrelated to his case and that the sentencing court was prejudiced against him are not constitutional or jurisdictional claims. Because Evans has not demonstrated to the court that these alleged errors could not have been raised on appeal, they have been procedurally defaulted and must be dismissed.

**C.    Issue Previously Reviewed On Direct Appeal.**

Evans also argues the substantive reasonableness of his sentence. However, Evans previously raised this issue on appeal without success. It is well settled that issues disposed of by a previous appeal cannot be properly raised in a section 2255 motion. See Smith v. United States, 265 F.2d 14, 16-17 (5th Cir. 1959); United States v. Rocha, 109 F.3d 225 (5th Cir. 1997); Blackwell v. United States, 429 F.2d 514 (5th Cir. 1970). Therefore this argument is not cognizable.

**D.    Ineffective Assistance Of Counsel.**

Ineffective assistance of counsel claims may generally be heard under a section 2255 motion. See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). However, to prevail on a claim of ineffective assistance of counsel, Evans must prove that (1) his counsel's actions fell below an objective standard of reasonableness and

(2) his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The first prong of the Strickland analysis requires a showing by Evans that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. The Fifth Circuit has described this standard as requiring that counsel "research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000) (quotations and citation omitted). In evaluating counsel's performance, the court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Evans may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066.

Under the second prong of the Strickland test, Evans must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To satisfy the prejudicial prong of the Strickland test, Evans must establish that he would

have received less time in prison. See <u>United States v. Grammas</u>, 376 F.3d 433, 438 (5th Cir. 2004).[1] In the context of a guilty plea, Evans must comply with <u>Hill v. Lockhart</u>'s amendment to the <u>Strickland</u> criteria and prove prejudice by demonstrating that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). If Evans fails to establish either prong of the <u>Strickland</u> test, then his claim of ineffective assistance of counsel must fail.

1.    **Presentence Report.**

Evans claims that the Presentence Report was inaccurate and his attorney, Charles Kammer ("Kammer"), failed to file sufficient objections. Specifically, Evans complains that his attorney failed to present all evidence to the probation officer to negate the trial court's addition of two points to his offense level under United States Sentencing Guideline section 3C1.1 for obstruction of justice. During his presentence interview, Evans provided materially false information to the investigator regarding

---

[1]Previously, the prejudice test for ineffectiveness relating to the amount of a sentence in the Fifth Circuit was whether, but for counsel's actions, there was a reasonable probability that defendant would have received a "significantly less harsh" sentence. The Supreme Court later determined in <u>Glover v. United States</u>, 531 U.S. 198, 203, 121 S. Ct. 696 (2001), that "any amount of actual jail time has Sixth Amendment significance." Thus, the Fifth Circuit now holds that "<u>Glover</u> abrogates the significantly less harsh test, and that any additional time in prison has constitutional significance." <u>Grammas</u>, 376 F.3d at 438.

his contract with Globalstar. Section 3C1.1 provides: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." Application Note 3 to section 3C1.1 expressly provides: "The following is a non-exclusive list of examples of the types of conduct to which this enhancement applies: . . . (H) providing a materially false statement to a probation officer in respect to a presentence or other investigation for the court." Thus, the trial court was correct in adding two points to Evans's offense level for obstruction of justice.

Objections to the presentence report were filed by Kammer and argued by Kammer during the sentencing. When Kammer did, in fact, object to the obstruction of justice enhancement, the court overruled the objection, saying "[h]e's telling this probation officer stuff that's simply not true. That obstructs the writing of the Presentence Report and the information given to the Court. And I think the two points is relatively well-suited to the circumstances of Mr. Evans. You don't convince me otherwise." Record Document 64 at 6. Relying on the standards set forth above, the court finds that Evans has failed to satisfy the first prong of the Strickland test by showing that his trial counsel was deficient.

Evans also alleges that Kammer failed to object to the refusal by the court to apply the reduction for acceptance of responsibility. Again, objections were filed and

arguments were made by Kammer during the sentencing. United States Sentencing Guideline section 3E1.1(a) provides: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 level." Application Note 1(B) to section 3E1.1 provides: "In determining whether a defendant qualifies under subsection (1) appropriate considerations include, but are not limited to, the following: . . . (B) voluntary termination or withdrawal from criminal conduct or associations." Also, Application Note 4 states: "Conduct resulting in an enhancement under [section] 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. . . ." This court offered the following during the sentencing hearing: "He hasn't stopped his criminal activity while he's on bond on this Court's bond. His acceptance of responsibility is totally inappropriate. I overrule your objection." Id. at 10-11. Evans, again, has failed to satisfy the first prong of the Strickland test by showing that his trial counsel was deficient. Because Evans has failed to show that his counsel was deficient, this court need not address the issue of whether the alleged deficiency prejudiced Evans's rights. See Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994)("A court need not address both components of [the Strickland] inquiry if the defendant makes an insufficient showing on one").

2. **Guilty Plea.**

Because Evans's next claim of ineffective assistance of counsel is in the

context of a guilty plea, Evans must prove prejudice by demonstrating that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S. Ct. at 370. However, Evans has failed to meet this standard.

Evans alleges in this motion that the orders for which he submitted charges for were legitimate and he was not attempting to defraud anyone. Evans is attempting to claim actual innocence. However, during his guilty plea, the following exchange took place between Evans and the court:

> Court: I haven't asked such a question, but I sometimes do.
>
> And if you continue – if we – you and me, if we continue this guilty plea proceedings and I accept our guilty plea, do you understand that you have, in effect, waived those constitutional rights we just talked about? You have done away with them. Is that understood?
>
> Evans: Yes, sir.
>
> Court: Is that a free and voluntary statement on your part, with advice from your lawyer?
>
> Evans: Yes, sir.
>
> Court: Nobody leaned on you or pushed you around or made you come in here to plead guilty?
>
> Evans: No, sir.
>
> Court: Are you pleading guilty, Mr. Evans, because you are, in fact, guilty as charged in Count 10 of the indictment?

Evans:   Yes, sir.

Record Document 50 at 7.

As indicated above, during the hearing, Evans indicated that his guilty plea was a free and voluntary act and that he was, in fact, guilty. See id. Sworn statements in open court at guilty plea hearings "carry a strong presumption of verity." United States v. Palmer, 456 F.3d 484, 491 (5th Cir. 2006) (citations and quotations omitted). Evans's arguments in his current motion are belied by the Rule 11 package presented during the hearing, signed by both Evans and his counsel, and by his statements made during the guilty plea. See United States v. Adam, 296 F.3d 327, 333 (5th Cir. 2002); United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly).

Evans is also unable to demonstrate prejudice on this issue. There is significant evidence to indicate that Evans was fully informed at the time of his plea. Evans signed the plea agreement which stated, in pertinent part:

> I have read this plea agreement and discussed it with my attorney. I fully understand the plea agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.
>
> I affirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement.

Record Document 49 at 4-5.

Evans has failed to overcome the presumption that his attorney's actions "are encompassed within the wide range of reasonable competence." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. He has failed to set forth any evidence to show that his attorney's performance was "outside the wide range of professionally competent assistance" or resulted in any prejudice to him. Id. at 690, 104 S. Ct. at 2066. Because Evans has failed to meet his burden of proof, his claims of ineffective assistance of counsel during the plea process must fail.

### 3. Other Claims.

Evans has also raised a number of other claims based upon his attorney's ineffective assistance of counsel. However, like those claims discussed above, none of these survive the test set forth in Strickland. Ultimately, Evans has failed to satisfy either prong of the Strickland test as to any of his claims. As to cause, he has neglected to present any evidence to overcome the presumption that his attorney's actions were encompassed within the wide range of reasonable competence and fell under the ambit of strategy. As to prejudice, he has presented no evidence establishing that his attorney's actions were so serious as to render the proceedings unreliable and fundamentally unfair. Accordingly, all of Evans's ineffective assistance claims are without merit.

## III. CONCLUSION

For the above cited reasons, Evans's section 2255 motion (Record Document 76) is **DENIED.**

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 5th day of November, 2012.

_____
JUDGE TOM STAGG